## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
## Case No. 8:25-cv-1402

LILLY E. ALTHAUSER-BENSON,
An Individual,

         Plaintiff(s),

vs.

TAMPA J AUTOMOTIVE MANAGEMENT, LLC, d/b/a
JERRY ULM DODGE CHRYSLER JEEP RAM,
A Florida Limited Liability Company, and
STELLANTIS FINANCIAL SERVICES, INC.,
a Foreign Corporation.

        Defendant).

_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, LILLY E. ALTHAUSER-BENSON, an individual (hereinafter the "**Plaintiff**"),

hereby sues Defendants, TAMPA J AUTOMOTIVE MANAGEMENT, LLC, d/b/a JERRY ULM

DODGE CHRYSLER JEEP RAM, a Florida Limited Liability Company (hereinafter "**Dealer**" or

"**Dealership**") and STELLANTIS FINANCIAL SERVICES, INC., d/b/a CHRYSLER

CAPITAL, a Foreign Corporation, and alleges:

### *GENERAL ALLEGATIONS*

### *Allegations as to Parties*

1.    At all times material hereto, the Dealership was licensed by the State of Florida as

a dealer conducting automobile sales in Hillsborough County, Florida.

2.    At all times material hereto, the Dealership was a "dealer" as said term is defined

under 49 U.S.C. §32702(2) and Florida Statute §320.77(1)(a) and a "transferor" as said term is

defined under 49 C.F.R. §590.3.

3.    At all times material hereto, Plaintiff was *sui juris* and a resident of St. Lucie

County, Florida. Plaintiff is a "transferee" as said term is defined under 49 C.F.R. §580.3.

4.      STELLANTIS FINANCIAL SERVICES, INC. (hereinafter "**Holder**" or "**Lender**") is a Foreign entity authorized to do business in Florida as a lender and a "sales finance company" as defined in Fla. Stat. § 520.02(19) and is a "holder" of a "retail installment contract" as defined in Fla. Stat. § 520.02(8).

### *Factual Allegations*

### *Purchase of Vehicle - an Undisclosed Used Vehicle*

5.      On or about November 16, 2024, Plaintiff purchased a 2024 Jeep Wrangler Sahara 4xe (VIN: ending in 31031) ("Vehicle") from the Dealership for personal and household use.

6.      Plaintiff was expressly informed by the Dealership that the Vehicle was new and the Vehicle had been advertised as such by the Dealership.

7.      The dealership displayed a Monroney label[1] affixed to the Vehicle which disclosed a Manufacturer's Suggested Retail Price ("MSRP") of $78,875, further reinforcing the representation that the Vehicle was new.

8.      A true and correct copy of the Monroney Label is attached hereto as Exhibit "A."

9.      The Retail Installment Sale Contract ("RISC") executed on the date of purchase described the Vehicle as "*NEW*."

10.     A true and correct copy of the RISC is attached hereto as Exhibit "B."

11.     As part of the fraudulent scheme perpetrated by the Dealership, Plaintiff was also misled into believing the Vehicle qualified for a $3,750 EV tax credit, which was only available for new vehicles.

12.     Plaintiff was led to believe that the $3,750 EV tax credit would be attributed

---

[1] The Monroney label is required by the Automobile Information Disclosure Act of 1958 (15 U.S.C. § 1231 *et seq*.) and is only legally permitted to be used on new vehicles.

towards the transaction in addition to the rebates and discounts that appeared as line-items on the RISC.

13.    No valid IRS forms or time-of-sale reports were ever provided by the Dealership and ultimately the Plaintiff was unable to obtain the EV tax credit benefit.

14.    Unbeknownst to Plaintiff at the time, the Vehicle had been previously titled and had at least one prior owner predating her transaction.

15.    As part of her due diligence, the Plaintiff obtained a certified copy of the Vehicle's title history.

16.    A true and correct copy of the title history is attached hereto as Exhibit "C."

17.    The title history revealed that on March 16, 2024, the Vehicle was sold to SFS Leasing, and on April 3, 2024, a Florida title was issued to SFS Leasing. The title was never voided. *Id*.

18.    Upon good information and belief, the transfer of title from SFS Leasing to the Dealership was executed by an agent or employee of the dealership acting on behalf of SFS Leasing. As a result, the veracity of the mileage disclosures on the transfer are questionable and the mileage disclosures in the chain of title cannot be reasonably relied upon.

19.    The Dealership failed to provide the certificate of title for examination and instead utilized alternate mileage disclosure forms in violation of 49 U.S.C. §32705 and 49 C.F.R. §580.5.

20.    The Dealership utilized this scheme and artifice to conceal the true title history and prior ownership, thereby misrepresenting the Vehicle's condition and status.

21.    Plaintiff would not have purchased the Vehicle or would have paid significantly less had she known the truth.

22.    All conditions precedent to bringing this action have occurred, have been

performed, or have been waived.

23.     At no time did the Dealership disclose that the Vehicle was a used motor vehicle under Florida law.

24.     Based on the representations and the non-disclosures of the Dealership, Plaintiff agreed to purchase the Vehicle.

25.     As a result of the misrepresentations and omissions by the Dealership as further set forth herein, the Plaintiff has been damaged.

### *Finance Company Liability*

26.     Pursuant to 16 C.F.R. §433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "FTC Holder Rule," Lender is subject to all claims and defenses of the Plaintiff, as consumers, which are available against the credit-seller, to-wit, the Dealership.

27.     In compliance with the FTC Holder Rule, the Vehicle RISC at issue in the instant proceeding bears the following conspicuous language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

28.     Florida Statue § 516.31(2), known more commonly as the "Florida Holder Rule," provides in pertinent part the following:

> (2) Restriction on Certain Negotiable Instruments and Installment Contracts - A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which originated from the purchase concerning consumer goods or services is subject to all claims or defenses of the consumer debtor

against the seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when that claim or defense is asserted against the person.

29.    Accordingly, pursuant to Florida Holder Rule, Lender, as a holder or assignee of any negotiable instrument subject to the requirements of Florida Statutes Chapter 516, is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services, to-wit, the Dealership.

30.    Specifically, Plaintiff seeks restitution of all installment payments made in furtherance of the RISC, rescission of the transaction in full and damages up to and including the present balance of indebtedness under the RISC.

31.    Plaintiff avers that her claim is so large that it exceeds the remainder of any debt owed to Lender under the RISC.

32.    All conditions precedent to bringing this action have occurred, have been performed, or have been waived.

### COUNT I
### ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT
### (Dealership and Holder)

33.    This is an action for violation of the Federal Odometer Act, 49 U.S.C. §32701, *et sequi* (hereinafter the "**Act**").

34.    Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 32 above as if set forth hereat in full.

35.    At all times material hereto, Plaintiff was a "transferee" as said term is defined 49 C.F.R. §580.30.

36.    At all times material, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and a "transferor" as defined by 49 C.F.R. §580.30.

37.    At all times material hereto, the Vehicle was a "motor vehicle" as said term is defined under 49 U.S.C. §32101(7).

38.    Dealership failed to provide Plaintiff with the actual title certificate for the Vehicle, for examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

39.    Instead of complying with the requirements of the Act, the Dealership required Plaintiff to sign a motor vehicle dealer title reassignment supplement, and an application for certificate of title which concealed the fact that the Vehicle was a used motor vehicle.

40.    The sole means by which the Dealership disclosed the Vehicle's mileage was through the Transfer Forms.

41.    Through the above-described scheme and artifice, the Dealership was able to bypass the requirements of the Act to intentionally conceal the Vehicle's history.

42.    The Dealership designed and employed this tactic of requesting Plaintiff to sign the Transfer Forms instead completing the mileage disclosure on the title certificate as required by the Act with the specific intent of perpetuating fraud and deception on Plaintiff.

43.    The Dealership intentionally manipulated title procedures both to mislead Plaintiff and to serve its own ends, to-wit: the sale of a used vehicle for vastly more than it was worth.

44.    As an experienced motor vehicle dealer, the Dealership knew or should have known of the Act, and the regulatory requirements regarding disclosures and deliberately and recklessly disregarded what the law required.

45.    The Dealership deliberately deceived Plaintiff through the oral and written misrepresentations and non-disclosures referred to above.

46.    The Dealership has violated the Act in that the Dealership failed to disclose the mileage to the Plaintiff in writing on the title certificate in violation 49 C.F.R. § 580.5(c).

47.     The Dealership violated the Act with the specific intent to defraud.

48.     As a direct and proximate result of the violations of the Act, the Dealership is liable to Plaintiff in the sum of three times their actual damages or $10,000.00, whichever is greater.

49.     Plaintiff has retained the undersigned counsel to represent her interest herein and are obligated to pay said counsel a reasonable fee for its services.

50.     Pursuant to 49 U.S.C. §32710(b), Plaintiff is entitled to recover their reasonable attorneys' fees and court costs upon entry of judgment in their favor.

**WHEREFORE**, Plaintiff, LILLY E. ALTHAUSER-BENSON, an individual, demands judgment in her favor against Defendants, TAMPA J AUTOMOTIVE MANAGEMENT, LLC, d/b/a JERRY ULM DODGE CHRYSLER JEEP RAM, a Florida Limited Liability Company,  and STELLANTIS FINANCIAL SERVICES, INC., d/b/a CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally, for damages, together with interest, court costs and attorney's fees pursuant to 49 U.S.C. §32710(b).

## COUNT II
## ACTION FOR FRAUDULENT INDUCEMENT
### (Dealership and Holder)

51.     This is an action for fraudulent inducement under Florida common law.

52.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 32 as though fully set forth herein.

53.     At the time of the sale, the Dealership affirmatively represented to Plaintiff, both orally and in writing, that the Vehicle was "new."

54.     This representation was reinforced by the affixation of a Monroney label, the classification of the Vehicle as "new" on the Retail Installment Sales Contract, and statements by sales personnel.

55.     The Dealership knew or should have known that these representations were false.

56.     The Dealership had access to the Vehicle's title history, which showed that the Vehicle had been previously titled to SFS Leasing, and therefore did not qualify as a "new" motor vehicle under Fla. Stat. § 319.001(9) or Fla. Stat. § 320.60(3).

57.     The Dealership made these false statements and omitted the prior ownership and title history of the Vehicle with the specific intent that Plaintiff would rely on such statements in deciding to purchase the Vehicle.

58.     Plaintiff, an unsophisticated consumer, justifiably relied on the representations made by the Dealership, including the Monroney label, the classification of the Vehicle as "new" in the RISC, and the Dealership's silence as to the Vehicle's true status as used. Plaintiff had no reason to doubt the representations of a licensed motor vehicle dealer and was not afforded access to the title prior to the transaction.

59.     As a direct and proximate result of the Dealership's fraudulent inducement, Plaintiff entered into the sales transaction under false pretenses, purchased a used vehicle for the price of a new one, was deprived of eligibility for the $3,750 federal EV tax credit, and incurred financing obligations and depreciation losses. Plaintiff has been financially harmed in an amount to be determined at trial.

**WHEREFORE**, Plaintiff, LILLY E. ALTHAUSER-BENSON, an individual, demands judgment in their favor against Defendants, TAMPA J AUTOMOTIVE MANAGEMENT, LLC, d/b/a JERRY ULM DODGE CHRYSLER JEEP RAM, a Florida Limited Liability Company, and STELLANTIS FINANCIAL SERVICES, INC., d/b/a CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally, together with costs.

**COUNT III**
**REVOCATION OF ACCEPTANCE**
**(Dealership and Holder)**

60.     This is a claim for revocation of acceptance pursuant to the Warranty Act.

61.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 32 above as if set forth hereat in full.

62.     Plaintiff accepted the Vehicle without discovering the above-described defects because Plaintiff was reasonably induced to accept the Vehicle based on Dealer's misrepresentations and omissions along with the difficulty of discovering the above facts.

63.     Dealer refused and continues to refuse to correct the nonconformities present in the Vehicle.

64.     The nonconformities substantially impair the value and use of the Vehicle to the Plaintiff.

65.     Plaintiff notified Dealer, verbally and in writing, that Plaintiff was revoking acceptance.

66.     Despite receipt of Plaintiff's notices, Dealer failed to respond or otherwise resolve the Plaintiff's warranty dispute.

**WHEREFORE**, Plaintiff, LILLY E. ALTHAUSER-BENSON, an individual, demands judgment in her favor against Defendants, TAMPA J AUTOMOTIVE MANAGEMENT, LLC, d/b/a JERRY ULM DODGE CHRYSLER JEEP RAM, a Florida Limited Liability Company, and STELLANTIS FINANCIAL SERVICES, INC., d/b/a CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally for the following:

A.     Declaring acceptance has been properly revoked by Plaintiff and for damages incurred in revoking acceptance;

B.     A refund of the entire purchase amount paid by Plaintiff for the subject vehicle;

C.     Consequential, incidental and actual damages;

D.    Costs, interest and attorneys' fees pursuant to 1 5 U.S.C. §2310(d)(2); and,

E.    Such other relief this Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff, LILLY E. ALTHAUSER-BENSON, an individual, demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ Joshua E. Feygin
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email:  Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison St, Suite 208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiff*