1000.006

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:25-cv-01402-MSS-SPF

LILLY E. ALTHAUSER-BENSON,

Plaintiff,

v.

TAMPA J AUTOMOTIVE MANAGEMENT, LLC and
STELLANTIS FINANCIAL SERVICES, INC.,

Defendant.
_____/

## DEFENDANTS, TAMPA J AUTOMOTIVE MANAGEMENT, LLC, AND STELLANTIS FINANCIAL SERVICES, INC.'S UNOPPOSED MOTION TO STAY AND/OR ABATE THIS ACTION AND COMPEL ARBITRATION

The Defendants, TAMPA J AUTOMOTIVE MANAGEMENT, LLC, ("**Dealership**") and STELLANTIS FINANCIAL SERVICES, INC. ("**SFS**" or "**Holder**" or "**Lender**") (referred to jointly as "**these Defendants**" or "**Defendants**"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Federal Arbitration Act, 9 U.S.C section1 and applicable caselaw do hereby file this unopposed Motion to Stay and/or Abate this action and to Compel Arbitration pursuant to the arbitration provisions contained in the Retail Installment Sales Contract (attached hereto as Defendants' exhibit "A") and the Buyer's Order (attached hereto as exhibit "B"), and in support of this Motion would state that:

> "When it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a **Rule 12(b)(6)** standard without discovery's delay.'" Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 771 (3d Cir. 2013).

### I.   EXECUTIVE SUMMARY

**II.** In this action, Plaintiff asserts claims against these Defendants for: **(1)** Violation of the Federal Odometer Act; **(2)** Fraudulent Inducement; and **(3)** Revocation of Acceptance. All of Plaintiff's claims against these Defendants, however, are subject to mandatory and binding arbitration. As detailed herein, Plaintiff's November 16, 2024, execution of a Retail Installment Sales Contract (attached hereto and incorporated by reference as "**Exhibit A**") and vehicle Buyer's Order (attached hereto and incorporated by reference as "**Exhibit B**"), which each contain a binding arbitration provision, requiring that Plaintiff's claims against these Defendants be arbitrated.

### III. BACKGROUND

Plaintiff, Lilly E. Althauser-Benson ("**Ms. Althauser-Benson**" or "**Plaintiff**") claims that on or about November 16, 2024, she purchased from Dealer a 2024 Jeep Wrangler Sahara 4xe (VIN: ending in 31031) (the "**Vehicle**"). [Pl.'s Compl. at ¶ 5]. Plaintiff was informed by the Dealership that the Vehicle was new, and the Vehicle had been advertised as such by the Dealership. [Pl.'s Compl. at ¶ 6]. The Retail Installment Sale Contract executed on the date of purchase described the Vehicle as "NEW." [Pl.'s Compl. at ¶ 9]. Unbeknownst to Plaintiff at the time, the Vehicle had been previously titled and had at least one prior owner predating her transaction. [Pl.'s Compl. at ¶ 14]. Plaintiff's Complaint states that the transfer of title from SFS Leasing to the Dealership was executed by an agent or employee of the Dealership acting on behalf of SFS Leasing and therefore the mileage disclosures in the chain of title cannot be reasonably relied upon. [Pl.'s Compl. at ¶ 18]. All of Plaintiff's claims against these Defendants arise out of the purchase and sale of the 2024 Jeep Wrangler Sahara 4xe and in turn are subject to the Retail Installment Sales Contract and Vehicle Buyer's order arbitration provisions.

### IV. MEMORANDUM OF LAW

### a. LEGAL STANDARDS FOR A MOTION TO COMPEL ARBITRATION

According to the Federal Arbitration Act (FAA), the Court may compel arbitration if there is "an underlying agreement between the parties to arbitrate." Devine v. Bethesda Softworks, LLC, 636 F. Supp. 3d 564, 568 (D. Md. 2022). If the parties dispute the formation or validity of the arbitration agreement, "[m]otions to compel arbitration ... are treated as motions for summary judgment." Id.

The Court may refer issues of arbitrability to an arbitrator "so long as the parties' agreement [delegates these issues] by clear and unmistakable evidence." Harrison v. Gen. Motors LLC, 651 F. Supp. 3d 878, 885 (E.D. Mich. 2023) (citing *Rent-A-Center*, 561 U.S. at 69, 130 S.Ct. 2772). Courts should generally "apply ordinary state-law principles that govern the formation of contracts" in arbitration cases in addition to a "qualification" that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so. Blanton v. Domino's Pizza Franchising LLC, 962 F.3d 842, 847 (6th Cir. 2020). (See also Devine v. Bethesda Softworks, LLC, 636 F. Supp. 3d 564, 569 (D. Md. 2022) quoting *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013).

Because "[a]rbitration is a matter of contract between the parties," a judicial mandate to arbitrate must be predicated upon the parties' consent. Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) In Guidotti, an agreement between two parties included the following clause, "[i]n the event of any claim or dispute between [Guidotti] and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request." Id. at 768. The matter was sent to arbitration as the Court held the arbitration clause was "valid and enforceable." Id. at 770.

When it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims, "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Id. at 776. If the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question" and once limited discovery is complete, the Court may entertain a renewed motion to compel arbitration. Id.

### b. PLAINTIFF'S CLAIMS AGAINST THESE DEFENDANTS ARE SUBJECT TO ARBITRATION

Upon purchasing the 2024 Jeep Wrangler Sahara 4xe, Plaintiff agreed to an enforceable arbitration provision within the Retail Installment Sales Contract (attached hereto as **Exhibit A**) and the vehicle Buyer's Order (attached hereto as **Exhibit B**). As described in Devine, there exists two agreements between the parties which contain arbitration provisions. In comparing the terms of the arbitration clause in Guidotti to the arbitration clauses in the Retail Installment Sales Contract and vehicle Buyer's Order in this matter, the arbitration clauses should be enforced. The arbitration clauses in this matter are similar to the Guidotti arbitration clause which was enforced.

It is undisputed that there are written agreements to submit Plaintiff's claims against this Defendant to arbitration. The Retail Installment Sales Contract between the Plaintiff and these Defendants contains explicit language above the signature line on page 6 stating that:

> "[Plaintiff] agree[s] to the terms of this contract. [Plaintiff] confirm[s] that before [Plaintiff] signed this contract, [Dealer] gave it to [Plaintiff], and [Plaintiff] was free to take it and review it. [Plaintiff] acknowledge[s] that [she has] read all pages of this contract, including the arbitration provision above, before signing."

The vehicle Buyer's Order between the Plaintiff and these Defendants contains explicit language on page 5 stating that:

> "Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between [Plaintiff] and [these Defendants], which arises out of or relates to [Plaintiff's] credit application, purchase or condition of this Vehicle, this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at [Plaintiffs'] or [Dealer's] election, be resolved by neutral, binding arbitration and not by a court action..."

The language in both the Retail Installment Sales Contract and vehicle Buyer's Order serves as clear and unmistakable evidence that the parties entered into an agreement to arbitrate. Further, the explicit language referred to above included in the agreements in this matter is similar to the arbitration clause in <u>Guidotti</u> which the Court held was enforceable.

Per the arbitration clause in the vehicle Buyer's Order, each claim or dispute arising out of the purchase of the Vehicle shall at Plaintiff or this Defendant's election be resolved by arbitration. Here, as mentioned above, Plaintiff's purported Violation of Federal Odometer Act claim (Count I) alleges violation of the Odometer Act as it relates to the Subject Vehicle. Further, Plaintiff purports fraudulent inducement (Count II) in that these Defendants intentionally manipulated title procedures to mislead Plaintiff into purchasing a used vehicle for more than it was worth. Additionally, Plaintiff purports the action for revocation of acceptance (Count III) is in connection with the purchase of the Vehicle, as Plaintiff notified the Dealer in writing Plaintiff was revoking acceptance of the Vehicle due to nonconformities. Indeed, all of Plaintiff's claims against these Defendants arise out of the purchase and sale of the 2024 Jeep Wrangler Sahara 4xe. Plaintiff's claims against the Defendants should be stayed and/or abated and arbitration should be compelled pursuant to the arbitration clause in the subject agreements.

WHEREFORE, the Defendants, TAMPA J AUTOMOTIVE MANAGEMENT, LLC, and STELLANTIS FINANCIAL SERVICES, INC., respectfully request this Honorable Court to grant this unopposed motion and enter an order staying/abating this action and compelling the parties to proceed to arbitration as agreed to in the agreement between Plaintiff and these Defendants, and to reserve jurisdiction regarding any issues that need to be decided with regard to arbitration and any and all other relief this court deems just and proper in light of the foregoing.

## CERTIFICATE OF CONFERRAL

I HEREBY CERTIFY that on the 16th day of June 2025, counsel for the movants conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in this motion, and the parties have agreed that this motion is unopposed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June 2025, that I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

Joshua Feygin, Esquire
SUE YOUR DEALER - A LAW FIRM
1930 Harrison Street, Suite 208F
Hollywood, FL 33020
Josh@sueyourdealer.com

_(signature)_
Michael D. Siegel, Esquire
Katz Siegel & Maple P.L.
4114 Woodlands Parkway, Suite #402
Palm Harbor, Florida 34685
(727) 796-1000 - Telephone
(727) 797-2200 – Facsimile
mike@ksmlawyers.com

jjames@ksmlawyers.com
*Attorney for Defendants Tampa J Automotive Management, LLC, and Stellantis Financial Services, Inc.*
Florida Bar Number: 0436860
SPN#:00870580


*Nicholas S Agnello*
_____
Nicholas S. Agnello, Esquire
HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue NW
Suite 1000
Washington, D.C. 20006-3606
202-378-9334
Nick.agnello@huschblackwell.com
*Attorney for Defendant
Stellantis Financial Services, Inc.*

# EXHIBIT "A"

T3005509705-DP3005509707 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC

# LAW 553-FL-ARB-ea 1/24

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| LILLY E ALTHAUSER-BENSON | N/A | JERRY ULM CHRYSLER DODGE JEEP |
|  |  | 2966 N. DALE MABRY |
|  |  | TAMPA FL 33607 |
| Bu: | Co-Buyer's Birth Month: N/A | |
| Cel: | Cell: N/A | |
| Email: | Email: N/A | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of __7.69__ % per year. The Truth-In-Lending Disclosures below are part of this contract.
You have thoroughly inspected, accepted, and approved the vehicle in all respects.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2024 | JEEP WRANGLER 4XE | | 1C4RJXP60RW231031 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural   ☐ N/A |

You agree that we advised you whether, based on seller's knowledge, the vehicle was titled, registered, or used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $9327.81 is |
|---|---|---|---|---|
| 7.69 % | $ 18335.63 | $ 61881.01 | $ 80216.64 | $ 89544.45 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | 954.96 | Monthly beginning 12/16/2024 |
| N/A | N/A | N/A |

Or As Follows: N/A

**WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Returned Payment Charge:** If any check or other payment instrument you give us is dishonored or any electronic payment you make is returned unpaid, you will pay a charge of $25 if the payment amount is $50 or less; $30 if the payment amount is over $50 but not more than $300; $40 if the payment amount is over $300; or such amount as permitted by law.

Florida documentary stamp tax required by law in the amount of $ __216.65__ has been paid or will be paid directly to the Department of Revenue.
Certificate of Registration No. N/A

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of __5__ % of each installment.
**Prepayment.** If you pay early, you may have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

You assign all manufacturer rebates and cash back incentives used as a downpayment on this contract to seller. You agree to complete all documents required for assignment of rebates and incentives.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.



T3005509705-DP3005509707 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Price (including $ 2610.84 sales tax) ......... $ 67709.84 (1)
2. Total Downpayment =
   - Gross Trade-In Allowance ......... $ 24000.00
   - Less Pay Off Made By Seller (e) WELLS FARGO ......... $ 28422.19
   - Equals Net Trade In ......... $ -4422.19
   - + Cash ......... $ N/A
   - + Other MFG REBATES ......... $ 13750.00
   - + Other N/A ......... $ N/A
   - (If total downpayment is negative, enter "0" and see 5J below) ......... $ 9327.81 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ......... $ 58382.03 (3)
4. Predelivery Service Fees (if Not Included in Cash Price)
   - A Predelivery Service Charge ......... $ 1198.00
   - B Electronic Registration Filing Fee ......... $ 559.55
   - C FL PTA ......... $ 189.00
   
   These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.
   - Total Predelivery Service Fees ......... $ 1946.55 (4)
5. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   - A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
     - Life $ N/A
     - Disability $ N/A ......... $ N/A
   - B Vendor's Single Interest Insurance Paid to Insurance Company ......... $ N/A
   - C Other Optional Insurance Paid to Insurance Company or Companies ......... $ N/A
   - D Optional Gap Contract ......... $ 1200.00
   - E Official Fees Paid to Government Agencies ......... $ N/A
   - F Government Documentary Stamp Taxes ......... $ 216.65
   - G Government Taxes Not Included in Cash Price ......... $ 44.93
   - H Government License and/or Registration Fees
     - LICENSE FEE ......... $ 82.35
   - I Government Certificate of Title Fees ......... $ N/A
   - J Other Charges (Seller must identify who is paid and describe purpose)
     - to N/A for Prior Credit or Lease Balance (e) ......... $ N/A
     - to STATE OF FL for MVWTF/BATTERY/TIRE ......... $ 8.50
     - to N/A for N/A ......... $ N/A
     - to N/A for N/A ......... $ N/A
     - to N/A for N/A ......... $ N/A
     - to N/A for N/A ......... $ N/A
     - to N/A for N/A ......... $ N/A
     - to N/A for N/A ......... $ N/A
     - to N/A for N/A ......... $ N/A
     - to N/A for N/A ......... $ N/A
   - Total Other Charges and Amounts Paid to Others on Your Behalf ......... $ 1552.43 (5)
6. Loan Processing Fee Paid to Seller (Prepaid Finance Charge) ......... $ N/A (6)
7. Amount Financed (3 plus 4 plus 5) ......... $ 61881.01 (7)
8. Principal Balance (6+7) ......... $ 61881.01 (8)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____N/A_____, Year N/A. SELLER'S INITIALS N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 5D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term __84__ Mos.   DGW GAP
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X [signature]

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Buyer Signs X [signature]   Co-Buyer Signs X N/A

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**OPTIONAL SERVICE CONTRACTS**
You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

**REJECTION OR REVOCATION**
If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

**SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
You agree that you will, within a reasonable time, notify us of any change in your contact information.

**APPLICABLE LAW**
Federal law and the law of the state of Florida apply to this contract.

**NEGATIVE CREDIT REPORT NOTICE**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

T3005509705-DP3005509707 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the Insurance you want and sign below:**

## Optional Credit Insurance

☐ Credit Life:    ☐ Buyer    ☐ Co-Buyer    ☐ Both        ☐ Credit Disability:    ☐ Buyer    ☐ Co-Buyer    ☐ Both
Term **N/A**                                                 Term **N/A**
Premium: Credit Life $ **N/A**                               Credit Disability $ **N/A**
Insurance Company Name **N/A**                               Home Office Address **N/A**

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 5A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:
1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

X **N/A** _____  **N/A** _____   X **N/A** _____  **N/A** _____
Buyer                                   Date            Co-Buyer                                Date

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

X **N/A** _____  **N/A** _____   X **N/A** _____  **N/A** _____
Buyer                                   Date            Co-Buyer                                Date

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

X **N/A** _____  **N/A** _____   X **N/A** _____  **N/A** _____
Buyer                                   Date            Co-Buyer                                Date

## Other Optional Insurance

☐ **N/A** _____    **N/A** _____    Premium $ **N/A** _____
     Type of Insurance               Term
Insurance Company Name & Address
**N/A**

☐ **N/A** _____    **N/A** _____    Premium $ **N/A** _____
     Type of Insurance               Term
Insurance Company Name & Address
**N/A**

☐ **N/A** _____    **N/A** _____    Premium $ **N/A** _____
     Type of Insurance               Term
Insurance Company Name & Address
**N/A**

☐ **N/A** _____    **N/A** _____    Premium $ **N/A** _____
     Type of Insurance               Term
Insurance Company Name & Address
**N/A**

☐ **N/A** _____    **N/A** _____    Premium $ **N/A** _____
     Type of Insurance               Term
Insurance Company Name & Address
**N/A**

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

X **N/A** _____  **N/A** _____   X **N/A** _____  **N/A** _____
Buyer Signature                         Date            Co-Buyer Signature                      Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ **N/A** and is also shown in Item 5B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.
You authorize us to purchase Vendor's or Lender's Single Interest Insurance.

Buyer Signs X **N/A** _____   Co-Buyer Signs X **N/A** _____   Date: **N/A**



T3005509705-DP3005509707 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see 2.d.) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
   If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information during credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.
   The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

LAW 553-FL-ARB-ea 1/24 v1    Page 4 of 6

T3005509705-DP3005509707 - THIS CUSTOMER COMPLETED COPY WAS CREATED ON 11/16/2024 10:09:33 PM GMT

T3005509705-DP3005509707 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

| Trade-In Vehicle | Trade-In Vehicle |
|---|---|
| Year 2019 Make JEEP | Year N/A Make N/A |
| Model WRANGLER UNLIMI | Model N/A |
| VIN 1C4HJXEN2KW520021 | VIN N/A |
| Gross Trade-In Allowance $ 24000.00 | Gross Trade-In Allowance $ N/A |
| Payoff Made by Seller $ 28422.19 (e) | Payoff Made by Seller $ N/A (e) |
| Lienholder WELLS FARGO | Lienholder N/A |

You assign to Seller all of your rights, title and interest in such trade-in vehicle(s). Except as expressly stated to Seller in writing, you represent that your trade-in vehicle(s) has not been involved in an accident, has not had any major body damage or required any major engine repair, and was not previously used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

Buyer Initials [signed]   Co-Buyer Initials N/A

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the trade-in payoff amount shown above and in Item 2 of the Itemization of Amount Financed as the Pay Off Made by Seller. You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown above and in Item 2 to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown above and in Item 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown above and in Item 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" below, any assignee of this contract will not be obligated to pay the Pay Off Made by Seller shown above and in Item 2 or any refund.

Buyer Signature X [signed]   Co-Buyer Signature X N/A

**SELLER'S RIGHT TO CANCEL** - If Buyer and Co-buyer sign here, the provisions of the Seller's Right to Cancel section below, which gives the Seller the right to cancel if Seller is unable to assign this contract within _____45_____ days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller a charge of $ __45.00__ per day from the date of cancellation until the vehicle is returned or repossessed.

X [signed]                                                            X N/A
Buyer Signs                                                           Co-Buyer Signs

**Seller's Right to Cancel**
a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on page 1 of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated above to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.
b. If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.
c. Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. If Seller has already sold the Trade-in, the Seller will pay you the proceeds of the sale less any reasonable expenses incurred in connection with holding, preparing, reconditioning and selling the Trade-in and any prior credit or lease balance paid by Seller to a prior lienholder or lessor on your behalf.
d. If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision above for each day you do not return the vehicle after receipt of the notice of cancellation.
e. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those above) remain in effect even after you no longer have possession of the vehicle.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.



T3005509705-DP3005509707 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X [signature]   Co-Buyer Signs X N/A _____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See the rest of this contract for other important agreements.**

---

**NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.**

---

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X [signature] _____ Date 11/16/24   Co-Buyer Signs X N/A _____ Date N/A

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A _____ Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A _____   Address N/A _____

Seller Signs __JERRY ULM CHRYSLER DODGE JEEP__ Date 11/16/24   By X [signature] _____ Title FINANCE MGR

---

Seller assigns its interest in this contract to **STELLANTIS FINANCIAL SERVICES, INC** (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse  ☒ Assigned without recourse  ☐ Assigned with limited recourse
JERRY ULM CHRYSLER DODGE JEEP                                              FINANCE MGR
Seller                                 By                                  Title

---

LAW FORM NO. 553-FL-ARB-ea (REV. 1/24)
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
T3005509705-DP3005509707 - THIS CUSTOMER COMPLETED COPY WAS CREATED ON 11/16/2024 10:09:33 PM GMT

DEALER
LAW 553-FL-ARB-ea 1/24 v1   Page 6 of 6

EXHIBIT "B"

**VEHICLE BUYER'S ORDER**

Date: 11/16/2024

| Buyer Name and Address | Co-Buyer Name and Address | Seller Name and Address |
|---|---|---|
| LILLY E ALTHAUSER-BENSON | N/A | JERRY ULM CHRYSLER DODGE JEEP<br>2966 N. DALE MABRY<br>TAMPA FL 33607 |
| County: HILLSBOROUGH | County: N/A | Salesperson: |
| Email: | Email: N/A | STEVEN COTE |
| Phone: | Phone: N/A | ALEXANDER GREER |
| Cell: | Cell: N/A | |

**Agreement to Purchase.** Buyer and Co-Buyer agree to buy the vehicle described below ("Vehicle") from Seller for the amount and on the terms in this Vehicle Buyer's Order ("Agreement"). "Buyer" and "you" refer to the above Buyer and Co-Buyer, separately and together. "Dealer," "we," "us," and "our" refer to the above Seller. In this Agreement, (e) means an estimate.

### Vehicle Description

| Year: | Make: | Model: | Mileage: | Vehicle Identification Number: |
|---|---|---|---|---|
| 2024 | JEEP | WRANGLER 4XE | 28 | 1C4RJXP60RW231031 |

| New/Used/Demo/Executive: | Color: | Body: | Stock Number: |
|---|---|---|---|
| NEW | SILVER | 4DR 4WD SAHA | W231031 |

**Insurance Information.** You have arranged the following insurance on the Vehicle:
Insurance Company GEICO    Policy Number 6184423991

### Additional Sales Terms

If the Vehicle is used, unless indicated below, we do not know and are not able to make any representations about the Vehicle's history.

The Vehicle has previously been titled, registered or used as a (check all that apply) ☐ taxicab ☐ police vehicle ☐ short-term lease vehicle.

The Vehicle is titled as (check all that apply) ☐ rebuilt or assembled from parts ☐ kit car ☐ glider kit ☐ replica ☐ flood vehicle ☐ nonconforming vehicle (manufacturer buy back) ☐ custom vehicle ☐ street rod vehicle.

☐ THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER.
Buyer X N/A
Co-Buyer X N/A

You represent that you have thoroughly inspected the Vehicle. You approve and accept it. You had an opportunity to have the Vehicle inspected on Seller's premises (but not its service department) by a third party of your choice and at your expense. You are purchasing the Vehicle based on your inspection. You are not relying on any opinion, statement, or promise of the Seller or its employees that is not contained in the written agreements you are signing today.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Agreement, this Vehicle is sold "AS IS" and "WITH ALL FAULTS." The Seller makes no warranties, express or implied, on the Vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the Vehicle that the Vehicle Manufacturer may provide.

We have provided to you written warranty information if any applies to the sale of the Vehicle. This includes any warranty indicated on the Used Car Buyers Guide if the Vehicle is used. By initialing below, you acknowledge that you received the warranty information.

Buyer's Initials [signed]   Co-Buyer's Initials N/A

As a condition of the Vehicle sale, we agree to perform the following services: N/A
N/A

You agree to schedule services by calling N/A    within N/A    days of this Agreement.

### Trade-in Vehicle 1

Year 2019  Make JEEP  Model WRANGLER UNLIMI
VIN 1C4HJXEN2KW520021   Mileage 48623
Trade-in Allowance $ 24000.00
Lienholder WELLS FARGO
Payoff Amount 28422.19  Good Thru:
Lienholder N/A
Payoff Amount N/A  Good Thru: N/A

### Trade-in Vehicle 2

Year N/A  Make N/A  Model N/A
VIN N/A   Mileage N/A
Trade-in Allowance $ N/A
Lienholder N/A
Payoff Amount N/A  Good Thru: N/A
Lienholder N/A
Payoff Amount N/A  Good Thru: N/A

You assign to us all of your rights, title and interest in each Trade-In Vehicle. You represent that each Trade-In Vehicle was not previously used as a police vehicle, taxicab, or under a short-term lease. To the best of your knowledge, each vehicle you are trading in ☐ has ☐ has not been in any accident with damages exceeding $500.

Buyer Initials [signed]   Co-Buyer Initials N/A

FORM NO. FADA-80VIARB19_e (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company

Buyer Initial [signed]  Co-Buyer N/A   Page 1 of 5

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
DEALER

| | | |
|---|---|---|
| **SELLER'S RIGHT TO CANCEL.** If Buyer and Co-buyer sign here, the Seller's Right to Cancel section on page 3 applies. It gives us the right to cancel if we are unable to assign the Retail Installment Sale Contract within __45__ days of the date you and we sign it. If you fail to return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay us a charge of $ __25.00__ per day from the date of cancellation until the Vehicle is returned or repossessed.<br><br>X _(signature)_<br>  Buyer Signs<br><br>X __N/A__<br>  Co-Buyer Signs<br><br>**Trade-In Vehicle Payoff Agreement.** We relied on information from you and/or the lienholder or lessor of each Trade-In Vehicle to arrive at the page 1 trade-in payoff amount(s). You understand that each amount quoted is an estimate. We agree to pay the page 1 payoff amount(s) to each Trade-In Vehicle lienholder, lessor, or its designee. If the actual payoff amount is more than the page 1 amount, you must pay us the additional amount on demand. If the actual payoff amount is less than the page 1 amount, we will refund to you any overpayment we receive from the lienholder, lessor, or its designee.<br><br>**If you finance the Vehicle's purchase, you may do so through us or any finance source you choose. Another finance source could provide you terms more favorable than we do. If you purchase credit insurance, GAP or other third party product, we may receive a portion of the charges or other compensation from the product's provider.** | **Itemization of Sale** | |
| | Vehicle Purchase Price | 63601.00 |
| | **Predelivery Service Fees** | |
| | Predelivery Service Charge** | 1198.00 |
| | Electronic Registration Filing Fee** | 559.55 |
| | Third Party Private Tag Agency Fee** | 189.00 |
| | **Additional Items** | |
| | DGW GAP | 1200.00 |
| | DG ANTI-THEFT - F | 599.00 |
| | WINDOW TINT - F | 899.00 |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | **Taxes** | |
| | Sales Tax  6.00% | 2535.84 |
| | County Tax  1.50% | 75.00 |
| | Other Tax (Describe) | |
| | SALES TAX ON ANCILLARY PRODUCTS | 44.93 |
| | **Official Fees** | |
| | Title, Registration and/or License Fees | 82.35 |
| | Lemon Law Fee (New Cars Only) | 2.00 |
| | Lead-acid Battery Fee | 1.50 |
| | New Tire Fee | 5.00 |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | **Total Cash Price** | 70992.17 |
| | Trade-in Allowance | 24000.00 |
| | Trade-in Payoff Balance | 28422.19 |
| | Net Trade-In (If negative, enter $0 here and enter amount on Trade-In Balance Owing line.) | 0.00 |
| | Cash Down Payment | N/A |
| | Deferred Down Payment | N/A |
| | Rebate (Describe) REBATES | 13750.00 |
| | Other Down Payment (Describe) N/A | N/A |
| | **Total Down Payment** | 13750.00 |
| | Trade-In Balance Owing (See Net Trade-in) | 4422.19 |
| | **Balance Due on Delivery** | 61664.36 |

**These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

Predelivery service fees are paid to the dealer (not a governmental fee). Charging predelivery service fees do not add or change any warranties provided on the Vehicle.

DEALER

LAW FORM NO. FADA-BOV1ARB19_e (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company    Buyer Initials _(initials)_   Co-Buyer __N/A__   Page 2 of 5     THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**Seller's Right to Cancel**

a. Seller agrees to deliver the Vehicle to you on the date the Retail Installment Sale Contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on the front of the Retail Installment Sale Contract, and assign the Retail Installment Sale Contract to a financial institution. You agree that Seller has the number of days stated on page 2 of the Retail Installment Sale Contract to assign the Retail Installment Sale Contract. You agree that if Seller is unable to assign the Retail Installment Sale Contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the Retail Installment Sale Contract. Seller's right to cancel the Retail Installment Sale Contract ends upon assignment of the Retail Installment Sale Contract.

b. If Seller elects to cancel per Paragraph a. above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new Retail Installment Sale Contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of the notice of cancellation, you must return the Vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all Consideration Seller has received from you in connection with the Retail Installment Sale Contract.

d. If you do not return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the Vehicle from you, including reasonable attorney's fees. If you fail to return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on page 2 of this Agreement and as may be provided in the Retail Installment Sale Contract for each day you do not return the Vehicle after receipt of the notice of cancellation.

e. While the Vehicle is in your possession, all terms of the Retail Installment Sale Contract, including those relating to use of the Vehicle and insurance for the Vehicle, are in full force and you assume all risk of loss or damage to the Vehicle. You must pay all reasonable costs for repair of any damage done to the Vehicle while the Vehicle is in your possession. Seller may deduct from any Consideration due to you under paragraph c. above Seller's reasonable costs to repair the Vehicle and any daily charges you incur if you fail to return the Vehicle within 48 hours after the receipt of the notice of cancellation. If Seller cancels the Retail Installment Sale Contract, the terms of this Seller's Right to Cancel provision (including those on page 2 of this Agreement and as provided in the Retail Installment Sale Contract) remain in effect even after you no longer have possession of the Vehicle.



DEALER

LAW FORM NO. FADA-80VIARB19_e (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company

Buyer Initials _____  Co-Buyer __N/A__  Page 3 of 5

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

## Additional Terms and Conditions

**Definitions.** The following definitions apply to this Agreement:

- "Consideration" is the amount of the down payment paid in cash plus the Trade-In Vehicle. If we are returning the Consideration, we will return the Trade-In Vehicle to you. You agree to pay us the reasonable charges for any detailing or repairs performed on the Trade-In Vehicle and any reasonable storage charges. If we have already sold the Trade-In Vehicle, we will pay you the amount we receive for the sale after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.
- "Manufacturer" means the entity that manufactured the Vehicle or its distributor. We are NOT an agent of the Manufacturer. The Manufacturer is NOT a party to this Agreement. References to Manufacturer are used to help describe the contractual relationship between the Manufacturer and us or to refer to warranties that might be separately provided to you directly by the Manufacturer.
- "Retail Installment Sale Contract" refers to an agreement, if any, that you sign agreeing to pay for the Vehicle purchase over time.
- "Trade-In Vehicle" refers to each used vehicle you are selling to us as part of a down payment to purchase the Vehicle. If you are selling us more than one used vehicle, "Trade-In Vehicle" refers to each vehicle separately and together. Each Trade-In Vehicle is identified on page 1 of this Agreement.

**Manufacturer – New Vehicle Pricing, Design and Availability.** The Manufacturer may change the price, design or features of its new vehicles without notice to us. If this occurs before we deliver the Vehicle to you, we may change the Vehicle Purchase Price, design and features. If we do, you may cancel this Agreement. If cancelled for this reason, we will refund to you any amounts you have paid to us. We will also return any Trade-In Vehicle to you. You agree to pay us the reasonable charges for any detailing or repairs performed on the Trade-In Vehicle and any reasonable storage charges. If we have already sold the trade-in, we will pay you the amount we receive for the sale after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.

If the Manufacturer changes its new vehicle designs, parts, accessories, or other features, we are not obligated to make the same or similar changes to the Vehicle either prior to or after delivery to you. Unless otherwise required by law, we are not obligated to notify you of any Manufacturer's future new vehicle design or feature changes.

**Vehicle Delivery Delays.** Preparing and delivering the Vehicle may involve a number of activities and third parties. We are not liable if delivery is delayed or fails when the cause is in any way outside our control or is without our fault or negligence.

**Trade-In Vehicle.** You will transfer title to the Trade-In Vehicle to us free and clear of all liens except those noted in this Agreement. You agree to provide us with evidence of title as we may require. You make the following representations about the Trade-In Vehicle: (a) you are the sole, lawful owner with all rights and authority needed to transfer ownership; (b) there are no liens or encumbrances except those noted in this Agreement; (c) it has never been titled under any state or federal "brand" such as "defective," "salvage," "flood," etc.; (d) it's actual mileage is as provided in this Agreement; and (e) it contains all emission control equipment required which is all in working order, unless otherwise indicated in this Agreement. You authorize us to rely on these representations. If any of these representations are not true, we may elect to cancel this transaction. You will be responsible to pay for all damages resulting from your misrepresentations, including costs to recondition, legal fees, court and collection costs.

You give us permission to contact the lienholder(s) for payoff information.

**Trade-In Allowance.** The trade-in allowance provided in this Agreement is based on our appraisal of the Trade-In Vehicle when this Agreement is signed. We may re-appraise it if you deliver it to us at a later date. The re-appraised value will become the trade-in allowance. If the re-appraised value is less than the trade-in value in this Agreement, you will immediately pay us the difference. Instead, you may cancel this Agreement if you have not already taken delivery of the Vehicle.

**Refusal or Failure to Accept Delivery and Other Non-Performance.** If you refuse or fail to accept delivery of the Vehicle, we can keep any cash deposits you made to us. We may keep any cash deposits if you fail to keep any other promises in this Agreement. You will also be liable for our losses, expenses, and reasonable attorneys' fees in excess of cash deposits resulting from your failure to perform under this Agreement. You will be liable for these amounts except to the extent they are limited or prohibited by law. This section does not apply if you cancel this Agreement as allowed in the Trade-In Allowance or Manufacturer – New Vehicle Pricing, Design and Availability sections. This section also does not apply if this Agreement is cancelled because you are not able to obtain financing in the time allowed in the Balance Due and Payment section.

**Taxes.** The Vehicle Purchase Price provided includes reimbursement for Federal Excise taxes. The Vehicle Purchase Price does NOT include sales, use, ad valorem, or other federal, state or local taxes unless specifically noted. It also does not include occupational taxes based on sales volume unless specifically noted. Unless prohibited, you agree to pay all taxes assessed on the transaction in this Agreement. You agree to pay the taxes regardless of who is assessed with primary liability for them.

**Balance Due and Payment.** By signing this Agreement, you agree to purchase the Vehicle. If there is a Balance Due on Delivery, you must pay that amount in cash or obtain financing for it.

If the actual amount of title, registration and license fees is more than the amount charged in the Itemization of Sale, you agree to pay us the difference. If the actual amount is less than the amount charged in the Itemization of Sale, we will refund the overpayment to you.

If you finance the Balance Due on Delivery, you may do so through any finance source you choose. By signing this Agreement, we are NOT agreeing to finance your purchase of the Vehicle. If you finance the Balance Due on Delivery through a third party, we may cancel this Agreement if you do not obtain the financing within two business days. If you choose to finance your Vehicle purchase in a retail installment sale with us, you authorize us to assist in submitting your credit application to third parties for financing. If the transaction meets its requirements, a third party may agree to take assignment of a Retail Installment Sale Contract between you and us.

You understand that financing terms may vary from one source to another. You may be able to get more favorable financing terms with another finance source than through us.

This Agreement will continue in effect regarding the Vehicle sale even if you and we enter into a Retail Installment Sale Contract for its financing. In that case, the Retail Installment Sale Contract will control any inconsistencies between it and this Agreement.

**Dishonored Payments.** We may declare this Agreement null and void and retake the Vehicle if your down payment, balance due or other payment is dishonored or unpaid. If any check or other payment instrument you give us is dishonored or any electronic payment you make is returned unpaid, you will pay a charge of $25 if the payment amount is $50 or less; $30 if the payment amount is over $50 but not more than $300; $40 if the payment amount is over $300; or such amount as permitted by law.

**BUYER TO PURCHASE VEHICLE INSURANCE.** This Agreement does NOT include any state-required Vehicle insurance coverage. You must buy such insurance at your expense in the amounts and coverages required. You represent that you have or will buy required insurance before the Vehicle is delivered to you.

This Agreement does not include property insurance. The creditor may require it if you finance the Vehicle purchase. You must buy such insurance at your expense in the amounts and coverages required.

You agree to provide us with your insurance information if we request it. You represent that the insurance information you provide us is current and accurate.

**Accessories and Additional Equipment.** If the Vehicle includes accessories or equipment that are not listed on the Manufacturer's window sticker, they may not have been made or approved by the Manufacturer. Such items will not be covered by the Manufacturer's express limited warranty on the Vehicle (if any). Ask us if you have any questions about the Vehicle accessories and equipment.

**Servicing and Collection Contacts.** You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**Jury Trial Waiver. To the extent allowed by law, you and we both agree to waive the right to a jury trial if we go to court to resolve any claims in contract, tort, or otherwise, relating to this Agreement.**

**Rebates, Incentives, and Discounts.** We are not required to find or disclose all available rebates, incentives or discounts for which you might be eligible. If conditions apply to a rebate, incentive or discount, you must provide us with all necessary documentation to verify your eligibility. By this Agreement, all rebates, incentives, discounts and other similar payments are assigned to us.

**Predelivery Service Charge.** The Predelivery Service Charge itemized in the Itemization of Sale section is paid to us. It is NOT the same as any similar charge itemized by the Manufacturer on the Monroney label (Manufacturer sticker).

**Applicable Law.** Federal law and the law of the state of Florida apply to this Agreement.

**General Terms.** If any part of this Agreement is not enforceable for any reason, the other terms still apply and will be enforceable. Carrying out the intent of this Agreement may require you and us to sign a number of documents. You agree to assist as needed in their completion. You also agree to sign all documents reasonably needed to fulfill the promises and intent of this Agreement. You authorize us to correct any clerical error or omissions in this Agreement or in any related document.

DEALER

LAW FORM NO. FADA-BOVIARB19_e (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company

Buyer Initials _____ Co-Buyer N/A   Page 4 of 5

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Agreement was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Agreement. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

*The Annual Percentage Rate in a Retail Installment Sale Contract may be negotiable with us. We may assign any Retail Installment Sale Contract to a finance source and retain its right to receive a part of the finance charge imposed on that contract.*

Section 501.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade practice, a consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the name and address of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents in the possession of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally recognized carrier, return receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occurred, or an address at which the dealer regularly conducts business.

X _[signature]_ X N/A
Buyer's Signature                          Co-Buyer's Signature

This Vehicle Buyer's Order is the complete agreement between you and us relating to the sale of the Vehicle. There are no other written or oral agreements. Any change to this Agreement must be in writing and signed by you and us.

Buyer Signs: X _[signature]_        Co-Buyer Signs: X N/A

This Agreement is not binding on us until it is signed by our authorized representative.

This Agreement includes the terms and provisions on all pages of this Agreement. It includes the Arbitration Provision above. By signing, you represent that you read and agree to all the terms of this Agreement, including the Arbitration Provision. You also represent that you received a completed copy of this Agreement.

Buyer Signs: X _[signature]_        Co-Buyer Signs: X N/A

Seller: X _[signature]_             By: **FINANCE**        Its: _____

DEALER

FORM NO. FADA-BOVIARB19 (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company

Buyer Initials _[initials]_  Co-Buyer N/A   Page 5 of 5

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.